CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for
RKu
MAR 1 0 2006
JOHN F. CORCORAN, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DONALD ROBERT PILCHER, | ) | |
| Petitioner, | ) | Civil Action No. 7:05CV00696 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| GENE M. JOHNSON, | ) | By: Hon. Jackson L. Kiser |
| Respondents. | ) | Senior United States District Judge |

Donald Robert Pilcher, a Virginia inmate proceeding pro se, filed this action as a petition

for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The petitioner challenges the validity of

his convictions in the Circuit Court for the County of Roanoke. The petition is presently before

the court on the respondent's motion to dismiss. For the reasons set forth below, the court will

grant the respondent's motion.

## BACKGROUND

On September 25, 2001, a jury convicted the petitioner of raping and taking indecent

liberties with his daughter Peggy.[1] The petitioner was subsequently sentenced to concurrent

terms of imprisonment of twelve years for rape and five years for indecent liberties.

The petitioner appealed the convictions to the Court of Appeals of Virginia. The

petitioner raised the following issues on appeal:

1.  Under the circumstances of this case, is the rape shield law an ex post facto law?

2.  Should the statement given by Pilcher to the detective be suppressed for failure to give a Miranda warning?

3.  Did the lapse of time between the offenses and prosecutions result in a lack of due process of law?

---

[1]The sexual acts allegedly occurred in 1969. Peggy did not initiate charges against the petitioner until after her mother died in August of 1999.

4.      Should a preliminary hearing have been held?

On May 1, 2002, a single judge on the Court of Appeals denied the petition. However, on

September 30, 2002, a three-judge panel awarded an appeal on ex post facto issue. The

petitioner's convictions were subsequently affirmed in a published opinion entered on July 15,

2003. See Pilcher v. Commonwealth, 41 Va. App. 158, 583 S.E.2d 70 (Va. Ct. App. 2003). The

petitioner then filed a petition for appeal in the Supreme Court of Virginia. On December 17,

2003, the petition for appeal was refused.

On April 24, 2002, while the petitioner's appeal was pending in the Court of Appeals of

Virginia, the petitioner filed a pro se petition for writ of habeas corpus in the Supreme Court of

Virginia. The petition included claims involving his daughter Peggy's case, as well as a similar

case involving his daughter Donna. The claims were as follows:

1.      The police obtained a statement from him in violation of his Miranda rights.

2.      The Commonwealth's Attorney did not disclose a police report and wrongly
        sought indictments for fornication under Virginia Code § 18.2-344.

3.      The trial judge denied him a preliminary hearing, allowed the indictments to be
        amended, and applied the rape shield law to bar evidence regarding the
        complainant's prior sexual history.

4.      His trial attorneys were ineffective because they did not obtain evidence that
        would have refuted the claim of his daughter Peggy that she had reported to a
        counselor in 1978 that her father had sexually abused her.

5.      His trial attorneys did not have Pilcher take a lie detector test or any psychological
        tests that would have shown he was not guilty of the charges.

6.      His trial attorneys did not defend the case aggressively.

7.      One of his trial attorneys violated client confidentiality by discussing the case with
        other people.

2

8.  His trial attorneys cited the wrong sections of the Virginia Code in the petition for appeal.

9.  His trial attorneys did not move for a new trial based on a discrepancy between the police report and Peggy's trial testimony concerning the year an offense against her had occurred.

On July 10, 2002, the petitioner asked to have the habeas petition withdrawn. On July 22, 2002, the Supreme Court entered an order stating that the petition was "dismissed/withdrawn without prejudice to petitioner's right to file a subsequent habeas corpus petition, limited to the ground or grounds assigned in the present petition and limited to the requirements of § 8.01-654(A)(2)."

On October 14, 2004, the petitioner filed a second habeas petition in the Supreme Court of Virginia. The petitioner raised the same claims that are included in the instant petition, with the exception of claims L(1), (2), (3) and (4). The Supreme Court dismissed the petition on May 16, 2005. The Court concluded that the claims were either procedurally defaulted or without merit. On September 23, 2005, the Supreme Court denied the petitioner's request for rehearing.

The petitioner executed the instant petition on November 2, 2005. The petition includes the following claims:

A.  The petitioner's trial attorneys were ineffective for the following reasons:

(1)  They failed to utilize the Freedom of Information Act, a subpoena duces tecum, or "other legal means" to obtain information regarding:
   (a)  family court proceedings in August of 1978;
   (b)  Peggy's psychiatric records from 1978 or a deposition or testimony from her treating psychiatrist;
   (c)  Peggy's pre-natal records from 1979;
   (d)  a 911 call made on July 5, 1998;
   (e)  the petitioner's evaluation under an emergency custody order;
   (f)  the magistrate's record of the emergency custody order;
   (g)  the complaint Peggy made to police in September of 2000;
   (h)  the police report and summary; and
   (i)  records from Peggy's other psychiatric hospitalizations.

3

(2)     They failed to show that Peggy was biased and prejudiced against the petitioner and that she wanted to punish him because she thought he had nor properly cared for his ill wife.

(3)     They did not investigate, research, or present information from other family members to show the charges were false.

(4)     They did not argue that no direct indictments were allowed under Virginia Code § 16.1-158(8).

(5)     They were inexperienced in sexual abuse cases and should have obtained co-counsel with expertise in defending such accusations.

(6)     They failed to argue that Virginia Code § 16.1-158(8) required a preliminary hearing in juvenile court before a trial in circuit court.

(7)     They did not argue that the convictions were null and void because the court did not comply with Virginia Code § 16.1-158(8).

(8)     They failed to move to suppress the petitioner's statements to the police during an interview at his home.

(9)     They did not argue that the circuit court had no jurisdiction under Virginia Code § 16.1-158.

(10)    They did not argue that the indictments were illegal and void because the circuit court did not comply with Virginia Code § 16.1-158.

(11)    They cited to the wrong statute in a motion filed on February 13, 2001.

(12)    They did not retain co-counsel with expertise in defending sexual abuse charges.

(13)    Their lack of experienced co-counsel allowed the petitioner to be convicted on fabricated evidence.

(14)    They should not have taken the petitioner's case, knowing that they lacked the specialized expertise necessary to defend the charges.

(15)    They failed to research, present, and argue that the trial court lacked jurisdiction because no preliminary hearing was held in juvenile court.

(16)    They failed to move to set aside the verdict for lack of jurisdiction under Virginia Code § 16.1-158(8).

4

(17)    They did not argue that Peggy's complaint was false because she waited until one year after her mother's death to initiate charges.

(18)    They did not move to vacate the convictions on the ground that Peggy's testimony was inherently incredible and motivated by revenge against the petitioner.

(19)    They failed to make either mental or written notes about statements made by Peggy and her sisters and, thus, did not use the discrepancies to impeach the witnesses.

(20)    They did not recognize that the date of the offense contained in the presentence/police report was October 30, 1968, while Peggy testified at trial that the offense occurred on October 30, 1969, and they did not move to set aside the verdict.

(21)    They failed to recognize that other statements in the presentence report contradicted Peggy's trial testimony.

(22)    They did not file for discovery or use the Freedom of Information Act to get the police report.

(23)    They failed to rebut the prosecutor's argument that case law permitted direct indictment.

(24)    They did not argue that Peggy's lengthy delay in making the complaint of sexual abuse against the petitioner was not normal conduct.

(25)    They conceded the outcome of Peggy's case after the petitioner had been convicted in Donna's case.

(26)    They did not move to set aside the verdict under Rule1:1 on the ground that Virginia Code § 16.1-158(8) controlled and was not complied with, as no preliminary hearing was held in juvenile court.

(27)    They did not object to the prosecutor's references to other crimes committed by the petitioner.

B.    The petitioner's appellate attorneys rendered ineffective assistance in representing the petitioner in the Court of Appeals of Virginia for the following reasons:

(1)    They did not argue that the trial court lacked jurisdiction and that the charges were null and void because no preliminary hearing was held, as required by Virginia Code § 16.1-158(8).

5

(2)  They relied on the wrong section of the Virginia Code to argue that a preliminary hearing was required.

(3)  They failed to competently and properly assert a due process claim regarding the delay between the alleged offense and the complaint.

(4)  They did not argue that the Court of Appeals could use the ends of justice exception to find a due process violation under Virginia Code § 16.1-158(8).

C.  The petitioner's appellate attorneys rendered ineffective assistance in representing the petitioner in the Supreme Court of Virginia for the following reasons:

(1)  They did not argue that the trial court lacked jurisdiction and that the charges were null and void because no preliminary hearing was held, as required by Virginia Code § 16.1-158(8).

(2)  They relied on the wrong section of the Virginia Code to argue that a preliminary hearing was required.

(3)  They failed to competently and properly assert a due process claim regarding the delay between the alleged offense and the complaint.

(4)  They did not argue that the Supreme Court could use the ends of justice exception to find a due process violation under Virginia Code § 16.1-158(8).

D.  The trial court violated the petitioner's due process rights by assuming jurisdiction over the charges, in disregard of § 16.1-158(8), which called for a preliminary hearing in juvenile court.

E.  His trial attorneys failed to recognize that the rape shield statute required a pretrial hearing and that, if such a hearing had not been held, evidence of prior sexual conduct might have been admissible to show a possible motive of fabrication.

F.  His attorneys failed to argue at trial and on appeal that case law allowed the admission of relevant evidence not within the enumerated exceptions to the rape shield law, when such evidence would protect the constitutional right of the defendant to present evidence probative of his defense.

G.  His trial attorneys failed to object when the prosecutor expressed his opinion that the petitioner's timetable for the day of the alleged rape sounded rehearsed.

H.  His trial attorneys failed to argue that Peggy's testimony about the rape was incredible and unworthy of belief.

6

I.      His trial attorneys failed to object when the prosecutor asked the petitioner on cross-examination about other offenses committed with his other daughters.

J.      His trial attorneys did not argue that Peggy had made a false police report because the presentence report said the complaint gave the date of the rape as October 30, 1968, but Peggy testified it occurred on October 30, 1969.

K.      His trial attorneys failed to investigate fully Peggy's testimony that she used Kleenex to stem the blood after the petitioner raped her.

L.      (1)     The rape shield law is an ex post facto law under the facts of the petitioner's case.

        (2)     His appellate attorneys were ineffective for arguing that his statement to detectives should have been suppressed, because there was no legal basis for a Miranda claim.

        (3)     The lapse of time between the offenses and the prosecution resulted in a lack of due process of law.

        (4)     A preliminary hearing was required in the criminal case.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254(b), a petitioner challenging a state court conviction must first exhaust remedies available in the courts of the state in which she was convicted before seeking federal habeas review. See Preiser v. Rodriguez, 411 U.S. 475 (1973). When a claim has been adjudicated on the merits by a state court, this court may grant habeas relief only if the state court's adjudication of the claims "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law," or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). The United States Supreme Court has explained that this statute "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000) (internal citations omitted). Consequently,

"state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Id. at 389.

## DISCUSSION

A.    Procedurally Defaulted Claims

The Supreme Court of Virginia concluded that claims A(1)(b)-(i), A(2)-(19), A(21)-(27), E, F (as it pertains to trial counsel), G, H, I, and K were barred by Virginia Code § 8.01-654(B)(2)[2]. The United States Court of Appeals for the Fourth Circuit has repeatedly held that the procedural default rule set forth in § 8.01-654(B)(2) constitutes an adequate and independent state ground for the denial of habeas relief. See Mackall v. Angelone, 131 F.3d 442, 445 (4th Cir. 1997) (citing Pope v. Netherland, 113 F.3d 1364, 1372 (4th Cir. 1997); Gray v. Netherland, 99 F.3d 158, 163 (4th Cir. 1996)). As a result, this court may not review the claims unless the petitioner demonstrates "cause for, and resulting prejudice from, the default or that he has suffered a fundamental miscarriage of justice." Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998). Because the petitioner has not made either showing, claims A(1)(b)-(i), A(2)-(19), A(21)-(27), E, F (as it pertains to trial counsel), G, H, I, and K must be dismissed.

The Supreme Court of Virginia concluded that claim D was procedurally barred pursuant to Slayton v. Parrigan, 215 Va. 27, 205 S.E.2d 680 (Va.1974), because the petitioner failed to raise the claim on direct appeal. The Fourth Circuit has also held that the rule set forth in Slayton constitutes an adequate and independent state ground for the denial of habeas relief. See Fitzgerald v. Greene, 150 F.3d 357, 366 (4th Cir. 1998); Fisher, 163 F.3d at 853; Wright v.

_____

[2] Section 8.01-654(B)(2) provides, in pertinent part, that "[n]o writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code § 8.01-654(B)(2).

8

Angelone, 151 F.3d 151, 159-60 (4th Cir. 1998). Therefore, claim D may not be reviewed by

this court "absent cause and prejudice or a miscarriage of justice to excuse the procedural

default." Fisher, 163 F.3d at 853-854. Because the petitioner has not made either showing,

claim D must be dismissed.

      B.     Remaining Claims

      1.     Claim A(1)(a)

In claim A(1)(a), the petitioner contends that his trial attorneys were ineffective for failing

to acquire information from a family court proceeding in 1978, which would have allegedly

shown that Peggy had not complained about any sexual abuse by her father. A criminal

defendant's right to effective assistance of counsel is protected by the Sixth Amendment to the

United States Constitution. In Strickland v. Washington, 466 U.S. 668, 669 (1984), the United

States Supreme Court set forth a two-prong test for evaluating ineffective assistance claims. The

defendant must show that his counsel's performance fell "below an objective standard of

reasonableness," and that the "deficient performance" must have "prejudiced the defense." Id. at

687-688. The prejudice prong "generally requires the defendant to demonstrate by a reasonable

probability that, but for counsel's error, the result of the proceeding would have been different."

Frazer v. South Carolina, 430 F.3d 696, 703 (4th Cir. 2005). Upon reviewing this claim as part

of the state habeas proceedings, the Supreme Court of Virginia concluded that the claim failed to

satisfy either prong of the Strickland test.

Having reviewed the record, I agree with the respondents that the Supreme Court's

decision did not involve an unreasonable application of clearly established federal law or an

unreasonable determination of the facts. The petitioner has failed to show that this attorneys'

performance was deficient. The trial transcript reveals that his attorneys extensively questioned

9

Peggy about the occasions on which she had previously reported the incidents of sexual abuse. (Sept. 25, 2001 Tr. at 78-80). Additionally, the petitioner's attorneys questioned him regarding whether or not Peggy had reported the incidents of sexual abuse in the past. (Tr. at 98). The petitioner testified that if any allegations of sexual abuse had been made in the past, the petitioner "would have been in this stand years ago." (Tr. at 98). Moreover, the petitioner has failed to show that his attorneys prejudiced his defense by failing to obtain the information at issue. While the petitioner may speculate that the outcome of his trial may have been different if his attorneys had obtained the information, the petitioner's speculation is insufficient to satisfy the Strickland test. See Booth-El v. Nuth, 288 F.3d 571, 584 (4th Cir. 2002). Accordingly, claim A(1)(a) must be dismissed.

### 2. Claims A(20) and J

In claims A(20) and J, the petitioner contends that his trial attorneys were ineffective because they did not recognize that the presentence report, which was based on the police report, stated that the rape occurred on October 30, 1968, while Peggy testified at trial that the rape occurred on October 30, 1969. The petitioner contends that his attorneys should have argued that Peggy made a false report to the police, and that her testimony was not worthy of belief. Upon reviewing the petitioner's argument as part of the state habeas proceedings, the Supreme Court of Virginia determined that the argument failed to satisfy either prong of the Strickland test.

Having reviewed the record, I conclude that the Supreme Court's decision did not involve an unreasonable application of clearly established federal law or an unreasonable determination of the facts. The record indicates that the petitioner advised the court of the discrepancy regarding the date during the sentencing hearing. (Oct. 23, 2001 Tr. at 9). Additionally, Peggy testified that she recalled the specific date that the petitioner raped her, October 30, 1969,

10

because it was the same date on which her youngest brother was born. (Sept. 25, 2001 Tr. at 57). That date was corroborated by other evidence, including Pilcher's own testimony. (Sept. 25, 2001 Tr. at 96, Oct. 23, 2001 Tr. at 9). Thus, the petitioner has failed to demonstrate that his attorneys' performance was deficient, or that, but for the alleged error, the result of his trial would have been different. Accordingly, claims A(20) and J must be dismissed.

3.      Claims B(1)-(4), C(1)-(4), and F (as it pertains to appellate counsel)

In claims B(1)-(4), C(1)-(4), and F (as it pertains to appellate counsel), the petitioner essentially argues that his appellate attorneys were ineffective for either failing to raise certain arguments on appeal, or for choosing to raise certain arguments. The petitioner raised the same claims in his state habeas petition. The Supreme Court of Virginia concluded that these claims failed to satisfy the Strickland test. The Supreme Court explained that the selection of issues to raise on appeal is left to the discretion of counsel, and that counsel need not raise every possible issue on appeal.

Having reviewed the record, I conclude that the Supreme Court's decision did not involve an unreasonable application of clearly established federal law or an unreasonable application of the facts. When applying the Strickland test to claims of ineffective assistance of counsel on appeal, reviewing courts must accord appellate attorneys the "presumption that [they] decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). The United States Supreme Court has explained that "the process of 'winnowing out weaker claims on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Burger v. Kemp, 483 U.S. 776, 784 (1987) (internal citations omitted). In this case, the petitioner has failed to show that his appellate attorneys' selection of issues was deficient, or that he was

11

prejudiced by their performance. While the petitioner may speculate that his appellate

proceedings would have ended differently if certain arguments had been made, mere speculation

is insufficient to establish a claim under Strickland. See Booth-El, 288 F.3d at 584.

Accordingly, claims B(1)-(4), C(1)-(4), and F (as it pertains to appellate counsel) must be

dismissed.

### 4. Claim L(1)

In claim L(1), the petitioner claims that the rape shield statute, Virginia Code § 18.2-67.7,

was an ex post facto law as applied in his criminal case. The petitioner raised the same claim at

trial and on direct appeal. The Court of Appeals of Virginia held that the challenged statute was

not an ex post facto law as applied in the petitioner's case, because it did not affect the

petitioner's substantive rights. The ruling of the Court of Appeals was affirmed by the Supreme

Court of Virginia. See Saunders v. Reynolds, 214 Va. 697, 700-701, 204 S.E.2d 421, 424 (Va.

1974) (the denial of a petition for appeal is a decision on the merits of a case).

Having reviewed the record, I conclude that the appellate courts' decision did not involve

an unreasonable application of clearly established federal law or an unreasonable determination

of the facts. See Miller v. Florida, 482 U.S. 423, 433 (1987) ("[N]o ex post facto violation

occurs if the change in the law is merely procedural and does 'not increase the punishment, nor

change the ingredients of the offense or the ultimate facts necessary to establish guilt.'") (quoting

Hopt v. Utah, 110 U.S. 574, 590 (1984)). Therefore, claim L(1) must be dismissed.

### 5. Claim L(2)

In claim L(2), the petitioner argues that his appellate attorneys were ineffective for

arguing that his statement to detectives should have been suppressed for failure to give a Miranda

warning, because there was no legal basis for a Miranda claim. It appears from the record that

12

the petitioner failed to raise this argument in his state <u>habeas</u> petition.[3] This claim, therefore, has

not been exhausted and could be properly treated as procedurally defaulted. See <u>Gray v.</u>

<u>Netherland</u>, 518 U.S. 152, 161-62 (1996). "However, the issue of procedural default generally is

an affirmative defense that the Commonwealth must raise and preserve." <u>Roach v. Angelone</u>,

176 F.3d 210, 215 at n.3 (4th Cir. 1999). Since the Commonwealth has not asserted the defense

with respect to this claim,[4] I will review the claim on the merits.

As previously explained, reviewing courts must accord appellate attorneys the

"presumption that [they] decided which issues were most likely to afford relief," when applying

the <u>Strickland</u> test to claims of ineffective assistance of counsel on appeal. <u>Pruett</u>, 996 F.2d at

1568. In this case, the petitioner has failed to show that it was objectively unreasonable for his

appellate attorneys to raise the <u>Miranda</u> issue on direct appeal, or that, but for his attorneys'

deficient performance, there is a reasonable probability that his appeal would have succeeded.

The petitioner's speculation that his appeal may have succeeded if his attorneys had not

"wast[ed] time and effort on the said meritless claim" is insufficient to establish a claim under

<u>Strickland</u>. See <u>Booth-El</u>, 288 F.3d at 584. Accordingly, claim L(2) must be dismissed.

      6.    <u>Claim L(3)</u>

In claim L(3), the petitioner alleges that the lapse of time between the alleged offenses

and the prosecution violated his due process rights. The petitioner raised this issue at trial and on

direct appeal. The Court of Appeals of Virginia concluded that the claim was without merit,

---

[3]The court notes that the petitioner did raise the argument in the state <u>habeas</u> petition pertaining to the case involving his daughter Donna.

[4]It appears that the Commonwealth misconstrued the petitioner's claim to assert a <u>Miranda</u> violation. Although the petitioner begins the claim by stating that "[a] statement given by Pilcher to the detectives should have been suppressed because of the failure to give a <u>Miranda</u> warning," the petitioner goes on to explain that "the said claim should <u>not</u> have been made since the law applicable to voluntary statements obviously applied, and, therefore, there was no valid claim about a violation of the <u>Miranda</u> rule."

13

because there is no statute of limitations for felony offenses, the delay was not attributable to the government, and the petitioner demonstrated no actual prejudice from the delay. The ruling of the Court of Appeals was affirmed by the Supreme Court of Virginia. See Saunders, 214 Va. at 700-701, 204 S.E.2d at 424.

Having reviewed the record, I conclude that the appellate courts' decision did not involve an unreasonable application of federal law or an unreasonable determination of the facts. See Jones v. Angelone, 94 F.3d 900, 909, 911 (4th Cir. 1996) (dismissing the petitioner's claim that the delay between the commission of the alleged crimes and his arrest violated due process where he failed to show that he suffered actual prejudice from the delay, or "that the delay violated fundamental conceptions of justice or the community's sense of fair play and decency.") Accordingly, claim L(3) must be dismissed.

7.      Claim L(4)

In claim L(4), the petitioner alleges that the trial court erred by failing to hold a preliminary hearing in juvenile court. The petitioner contends that a preliminary hearing was required by Virginia Code § 16.1-158(8), which was in effect at the time of the alleged incidents. The same argument was raised at trial and on direct appeal. The Court of Appeals of Virginia concluded that the argument was precluded by the Supreme Court of Virginia's decision in Payne v. Warden of Powhatan Correctional Center, 223 Va. 180, 285 S.E.2d 886 (Va. 1982). In Payne, the Supreme Court held that "where an adult accused is directly indicted by a grand jury, without having been previously arrested and charged, the jurisdiction of the circuit court is thereby invoked, and no preliminary hearing is required, even though the victim of the crime involved

14

may be a juvenile." Payne, 223 Va. at 184, 285 S.E.2d at 888. The ruling of the Court of

Appeals was affirmed by the Supreme Court of Virginia. See Saunders, 214 Va. at 700-701, 204

S.E.2d 421 at 424.

"It is black letter law that a federal court may grant habeas relief 'only on the ground that

[the petitioner] is in custody in violation of the Constitution or laws or treaties of the United

States.'" Wright, 151 F.3d at 157 (quoting 28 U.S.C. § 2254(a)). See also Estelle v. McGuire,

502 U.S. 62, 67-68 (1991) (emphasizing that "it is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions."). Because claim L(4) rests solely

upon an interpretation of state statutes and case law, it is simply not cognizable on federal habeas

review.[5] See Wright, 151 F.3d at 157 (refusing to entertain a claim that the circuit court lacked

jurisdiction over two counts in an indictment that were never presented in the juvenile court,

since the claim rested solely on state law). Therefore, claim L(4) must be dismissed.

## CONCLUSION

For the reasons stated, I will grant the respondent's motion to dismiss. The

Clerk is directed to send certified copies of this opinion and the accompanying order to the

petitioner and counsel of record for the respondent.

ENTER: This 10th day of March, 2006.

Senior United States District Judge

---

[5]Even if claim L(4) was cognizable on federal habeas review, it would still fail, as the petitioner has not shown that the decision of the state appellate courts involved an unreasonable application of clearly established federal law or an unreasonable determination of the facts.